No. 39,380

In the Matter of the Estate of Margaret M. Henderson, Deceased. GEORGE GOEHNER, Executor of said Estate, and HENRY C. MOR-DAUNT, SOPHE MORDAUNT HENRY, CARRIE GAW MORDAUNT, HELEN HARLOW PICKETT, ALICE HARLOW ROWE, and THE FIRST PRESBY-TERIAN CHURCH OF LEAVENWORTH, KANSAS, Heirs and Legatees of said Estate, *Appellants*, v. LEE BOND, Administrator of the Estate of FRANK B. HENDERSON, Deceased, *Appellee*.

(268 P. 2d 941)

Opinion
filed April 10, 1954.

*James N. Snyder,* of Leavenworth, argued the cause and was on the briefs for the appellants.

*Lee Bond,* of Leavenworth, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

PRICE, J.: The basic question in this appeal is whether, under all of the facts and circumstances disclosed, the probate court had the power and authority, under G. S. 1949, 59-2234, to make an election in behalf of an incompetent surviving spouse's estate after the death of such spouse.

Both the probate court and, on appeal, the district court held that the probate court possessed such power, and from that ruling and another ruling incidental thereto the appeal is taken.

The facts are simple, are not in dispute, and are as follow:

Frank B. Henderson and his wife Margaret M. were residents of Leavenworth. They had no children.

In February, 1952, Frank suffered a stroke and was confined in a local hospital.

On May 5, 1952, Margaret executed a last will and testament in which no mention, directly or indirectly, was made of her husband, who at the time was still confined in the hospital. The will disposed of all of her property, including her interest in their home, which, we are told, was owned by them as tenants in common. Frank did not consent to the provisions of the will.

On June 2, 1952, Margaret died, and three days thereafter a petition for the probate of her will was filed. At this time Frank's condition, both mental and physical, had become so serious that he was wholly unable to transact any business.

On June 24, 1952, Lee Bond was appointed and qualified as guardian of Frank's person and estate.

On July 1, 1952, Margaret's will was admitted to probate, and George Goehner was duly appointed and qualified as the executor thereof.

On July 18, 1952, Frank's guardian filed a petition in Margaret's estate requesting the court to set aside to Frank, who was still incompetent, the homestead rights and statutory family allowances granted to a surviving spouse by G. S. 1949, 59-2235 and 59-403. The guardian's petition further sought an order appointing some suitable person as commissioner to ascertain the value of the provisions made for Frank by Margaret's will, as well as the value of the estate which would accrue to Frank by statute, in accordance with the provisions of G. S. 1949, 59-2234.

On July 18, 1952, the same date on which the foregoing petition was filed, and with the guardian, the executor and his counsel being present, the probate court made an order setting aside to Frank the homestead rights and statutory family allowances, and made a further order appointing Malcolm McNaughton, a member of the Leavenworth bar, as commissioner, with directions to proceed in accordance with the statute, G. S. 1949, 59-2234, hereinafter set out, and to file his verified report with the court.

On July 27, 1952, just nine days later, Frank died intestate, leaving two sisters and a brother as his only heirs-at-law, and on September 2, 1952, Lee Bond, who had been Frank's guardian, was appointed and qualified as administrator of his estate.

On September 2, 1952, the commissioner filed his report which of course showed that under Margaret's will Frank would take nothing, whereas by statute he would inherit one-half of her estate.

On September 2, 1952, the executor of Margaret's estate filed a petition to set aside the order made on July 18th allowing to Frank homestead rights and statutory family allowances, on the ground that as such allowances had not been paid or delivered over to him or his guardian in his lifetime, his estate, following his death, is not entitled to them. At the same time the executor petitioned the court for a further order that no election be made for Frank because of his death in the meantime, and that Margaret's will stand as written, and that Frank's estate should take nothing from her estate.

On September 8, 1952, the administrator of Frank's estate, by written answer, objected to the allowance of the foregoing petitions filed by the executor of Margaret's estate.

The probate court, after a full hearing thereon, overruled the contentions of the executor of Margaret's estate and ordered such executor to deliver over and pay to the administrator of Frank's estate the statutory family allowances.

The court further ordered that the report of the commissioner appointed pursuant to G. S. 1949, 59-2234, although filed subsequent to Frank's death, should be accepted by the court as though he were still living, and the court thereupon made an election in behalf of Frank to the effect that, whereas by the terms of Margaret's will he would take nothing, but by statute would inherit one-half of her estate, Frank's estate was entitled to distribution of one-half of her estate, and her executor was ordered to make such distribution upon final settlement of her estate.

On appeal to the district court these orders of the probate court were affirmed, and from such judgment the executor of Margaret's estate and all beneficiaries under her will have appealed to this court.

Two questions, therefore, are presented.

First: Did Frank's death, prior to the actual delivery to him and payment to him or his guardian, of the statutory family allowances, render the order of July 18, 1952, providing for such delivery and payment, a nullity?

In our opinion the question must be answered in the negative.

Frank, as the surviving spouse, was entitled to the family allowances as a matter of law under the provisions of G. S. 1949, 59-403 and G. S. 1949, 59-2235, and his death prior to the actual delivery and payment to him or his guardian did not alter the application of the rule. We hold, therefore, that under the facts of this case Frank's estate is entitled to receive payment of such allowances from Margaret's estate.

This brings us to the second and all-important question in the appeal, namely: Did the probate court have the power and authority, under the provisions of G. S. 1949, 59-2234, to go ahead and make the election in behalf of Frank's estate, following his death, or did such power and authority cease to exist upon his death?

G. S. 1949, 59-2234, reads as follows:

"If the surviving spouse shall be insane or incapacitated to act by reason of mental disability, it shall be the duty of the court to appoint some suitable person as commissioner, who shall ascertain the value of the provision made by will in lieu of the rights in the estate secured by statute and the value of the rights secured by statute. The commissioner shall make his verified written report to the court. Notice of the time and place of the hearing of the petition for the appointment of a commissioner and of the hearing on his report shall be given to the surviving spouse and his guardian, if any, and all other persons interested in such manner and for such length of time as the court shall direct. After the hearing on the report the court shall make such election for such

spouse under disability as is more valuable or advantageous to the spouse, which election shall be deemed as effectual as if made by the spouse when fully competent."

Counsel for all parties advise us that the precise question has never been decided by this court. Our limited research bears out such statement.

Margaret's executor and the beneficiaries under her will first contend for the general rule to the effect that the right of a competent surviving spouse to make an election with respect to his deceased spouse's will is a personal privilege and right, and that if he fails or neglects to make such election prior to his death the right does not survive to his heirs or personal representative, but dies with him, citing numerous decisions from other jurisdictions in support thereof. They then refer to our statute, G. S. 1953 Supp. 59-603, which reads:

"The surviving spouse, who shall not have consented in the lifetime of the testator to the testator's will as provided by law, may make an election whether he will take under the will or take what he is entitled to by the laws of intestate succession; but he shall not be entitled to both. If the survivor consents to the will or fails to make an election, as provided by law, he shall take under the testator's will."

and to G. S. 1953 Supp. 59-2233, providing for the time within which an election is to be made, as authority for their contention that under the facts here presented, no election having been made either by Frank or by the probate court in his behalf prior to his death, he is deemed to take under Margaret's will. It is further contended that as G. S. 1949, 59-2234, *supra,* makes no provision for an election by the court in behalf of an incompetent surviving spouse or his estate, following his death, the statute should be construed in accord with the general rule pertaining to elections by competent surviving spouses, that is, the right to make the election, even by the court, died with him.

The administrator of Frank's estate, on the other hand, contends that as the statute (59-2234) does not prohibit the court from completing the election subsequent to the death of the incompetent surviving spouse, equitable principles lead inevitably to the conclusion that the court, in the exercise of its general equity powers, does possess such authority.

As stated, this court has never been called upon to decide the precise question presented, but counsel concede, and we agree, that

there are authorities from other jurisdictions in support of either side of the question.

No attempt to review those decisions will be made. Concededly they are in conflict, as stated in 57 Am. Jur., Wills, § 1531, p. 1042:

"With respect to the situation presented where a beneficiary suffering under some legal disability, such as insanity, during the period between the testator's death and his own death dies before any election has been made in his behalf, the cases are not in agreement as to the right or power of the court or guardian to make a posthumous election for such a beneficiary, some cases upholding such power, and others denying it."

Attention also is directed to Bartlett's Kansas Probate Law and Practice, Revised Edition, Vol. 3, § 1286, p. 148, and to the annotations on the general subject found at 74 A. L. R. 452, 462, and 147 A. L. R. 336, 346, in which numerous cases are digested.

Here we have no question concerning what the general rule is, or should be, with reference to a competent surviving spouse who dies without making an election, and neither are we concerned with what the rule is with respect to the authority of a personal representative or heirs of an incompetent surviving spouse who dies, to make an election in his behalf. Our question is concerned *solely with the construction to be given G. S. 1949, 59-2234, supra,* where, as here, the proceeding whereby the court was to make the election was not completed prior to the death of the incompetent surviving spouse.

A careful study of the question leads us to the conclusion that under the facts of this case the probate court did possess the power and authority to make the election in behalf of Frank, or, as in reality, in behalf of his estate.

The rapid sequence of the very unusual facts and circumstances has already been related. There is no hint or suggestion of undue delay on the part of anyone. Parties to this litigation, and including the probate court, simply could not keep up with events as they transpired. We have no way of knowing Margaret's motive in executing her will. It may have been the result of an agreement or understanding between Frank and her. Be that as it may, he was seriously ill in a hospital at the time. She died less than a month later, at which time his condition, both mental and physical, was so serious that he was wholly unable to transact any business. The record shows that almost immediately after the probate of her will Frank's guardian followed the only avenue open to him—he peti-

tioned the probate court to set in motion the machinery provided by the statute for making an election in behalf of an incompetent surviving spouse. The court forthwith appointed a commissioner, as provided by the statute, and only nine days later Frank died. Certainly, under all of the circumstances, and particularly since the inventory and appraisement of Margaret's estate had not yet been filed no blame can be attached to the failure of the commissioner to file his verified report with the court in that nine-day interval. The fact remains, however, that during the twenty-seven-day period between the probate of Margaret's will and Frank's death the latter was mentally and physically incapacitated and wholly unable to make the election provided for by G. S. 1953 Supp. 59-603, *supra*. Furthermore, no rule or statute has been cited, and we know of none, which would have authorized Frank's guardian, during that interim, to make an election in behalf of his ward. The guardian followed the only procedure available to him.

Under Margaret's will, to which he did not consent, Frank took nothing. We are advised that her estate was valued at approximately $25,000. Had Frank lived, although remaining incompetent, the probate court of course would have elected in his behalf to take against the will, in which event Frank would take his statutory (G. S. 1949, 59-602) one-half of her estate, that being "more valuable or advantageous" (G. S. 1949, 59-2234) to him than nothing at all. Why, then, under the circumstances, should his death divest the probate court of power and authority to go ahead and make the election in behalf of his estate? We think that it did not.

The mere fact that our statutes (G. S. 1953 Supp. 59-603, *supra*, and G. S. 1953 Supp. 59-2233) providing for an election by a competent surviving spouse are so worded as to call for affirmative action if such spouse is to take against the will, does not preclude the probate court, under G. S. 1949, 59-2234, in the case of an incompetent surviving spouse, from making an election in behalf of such incompetent spouse's estate after his death. In this connection see *Ambrose v. Rugg*, 123 Ohio St. 433, 175 N. E. 691, reported at 74 A. L. R. 449, and *Mead v. Phillips*, 135 F. (2d) 819, reported at 147 A. L. R. 322.

The judgment of the lower court is in all respects affirmed.

PARKER, J., dissents.